1809.

Thomas
vs
Thomas

and exclusive of the land conveyed by *Parks* to *Arabella Worrell.* That the court of chancery make all necessary orders, and take measures for having this decree carried into full and complete effect.

DECREE REVERSED, &c.

DECEMBER.                THOMAS vs. THOMAS.

In an action of trespass *q. c. f.* the court refused to direct the jury, that if the plaintiff, 20 years before bringing the action, run his land in the presence of the defendant to a point, marked on the plots in the cause, as a boundary between his land and the land of the defendant, and the several lines from that point to certain other points, also marked on the plots, as divisional lines between them; and if the defendant has at no time committed any trespass over said divisional lines, in such case he is not a trespasser, and not liable to the action, unless he was previously warned or forbid to come to said lines.

APPEAL from *Frederick* County Court. Trespass for breaking and entering the close of the plaintiff, (now appellee,) called *The Resurvey on Hazzard.* The defendant, (the appellant,) pleaded the general issue. A warrant of resurvey was ordered and issued, and the lands in dispute were located and plots returned. The plaintiff at the trial in August 1806, offered in evidence the patent of *The Resurvey on Hazzard,* granted to *Notley Thomas,* on the 14th of February 1754; that the patentee entered and died seized, and that the plaintiff is his heir at law, and entered, &c. He further offered in evidence the plots and explanations; and the patents for the several tracts of land located thereon by him, and that the same are truly located by him on the plots. He also offered evidence, that the defendant had cut down, cleared and cultivated, part of the land within said locations; that the plaintiff in 1800, before this suit was brought, forewarned a person who was working under the direction of the defendant within said locations, not to cut on his land, and which person, having given the information to the defendant, was directed by him to cease cutting there. He also offered evidence, that he had at two different times told different persons that he expected one day to get the land now in controversy, but the defendant was not present at either of those conversations, and did not appear ever to have heard of this claim. The defendant then read in evidence the patent of a tract of land called *Moreland,* granted to him on the 28th of June 1784. He also gave in evidence the plots and explanations, with the several locations by him made thereon, and offered to prove that such locations were truly made. He also read in evidence a record, with the plots and explanations belonging thereto, of an action of *trespass* instituted in *Frederick* county court by the plaintiff, against him the defendant, for breaking and entering the close of

the plaintiff called *The Resurvey on Hazzard*, to which the defendant appeared and pleaded the general issue, and a warrant of resurvey issued, and the lands in dispute were located on plots made and returned in that action.  At the trial in that suit, the jury gave their verdict that the defendant was not guilty of the trespass complained of, and the plaintiff was nonsuited.   He also offered evidence, that the plaintiff and defendant in that action, and in the present action, are the same persons, and that the tracts of land, so far as in that record located, are the same as located in the present suit.   That the pretensions and locations of the plaintiff on the plots in that record, of the land called *The Resurvey on Hobson's Choice*, from the end of the 41st line thereof to the end of the 44th line, correspond with the location as made by the defendant on the plots in this cause.   He also offered evidence, that the plaintiff in 1782 acted as surveyor to run the division lines between the plaintiff and defendant, and that the lines were run, and an apple tree was marked at the end of the 41st line of *The Resurvey on Hobson's Choice*, in the presence of the plaintiff and defendant, as a corner between them.   That from the apple tree so marked, the plaintiff run, as divisional lines between himself and the plaintiff, the lines located by him on the plots; and that the defendant has ever since that running been cutting and clearing the land on the west side of the said divisional lines.  Other evidence was given by the defendant, which it is unnecessary to notice, it having no relation to the point decided by the court.  The defendant then prayed the opinion of the court, and their direction to the jury, that if from the evidence they find that the plaintiff, twenty years before the institution of this suit, run his land in presence of the defendant to the aforesaid apple tree, as a boundary between his lands and the lands of the defendant, and the several lines located by him as divisional lines between them; and if the defendant has at no time committed any trespass over said divisional lines, that in such case the defendant is not a trespasser, and not liable to this suit, unless he was previously warned or forbid to come to said lines.   But the county court, [*Buchanan*, Ch. J. *Clagett* and *Shriver*, A. J.] refused to give the direction as prayed.   The defendant excepted; and the verdict and judgment being against him, he appealed to this court.

1809

Thomas
vs
Thomas

1809

Berry
vs
Nicholls

The cause was argued before CHASE, Ch. J. NICHOLSON, GANTT, and EARLE, J. by

Harper, for the Appellant; and by
Shaaff, for the Appellee.

JUDGMENT AFFIRMED,

━━━━━━━━━━━━━

DECEMBER,

A judgment having been obtained by B against E, and C his surety, a *fi. fa.* issued thereon against E, who survived C, and was laid on E's lands. The administrator of C paid the amount of the judgment to B, who directed the judgment to be entered for the use of the administrator of C A *venditioni exponas,* issued for the use of the administrator of C, for a sale of the lands, was returned unsold, and was, on motion of the defendant, *quashed.*

BERRY, use BURGESS's Adm'r. vs. NICHOLLS.

VENDITIONI EXPONAS. A judgment was rendered in the late general court at May term 1791, in favour of Z. Berry against E. Nicholls and C. Burgess, on which writs of execution regularly issued, but were not executed, until the 14th of July 1806, when a writ of *fieri facias* was issued, returnable to this court, against Nicholls as survivor of Burgess, whose death was suggested, and was returned by the sheriff, "laid as pr. schedule, not sold, &c." The schedule described the property as follow: viz. "one house and lot in the town of Upper Marlborough, in the possession of John Hodges of Thomas; and one house and lot in the town of Upper Marlborough, occupied by Philip T. Baker, Esquire." The plaintiff gave directions in writing to the clerk of this court, dated the 19th of August 1809, to have the judgment he had obtained against E. Nicholls, and C. Burgess as security, entered for the use of Dennis M. Burgess, adm'r. of C. Burgess, the money having been paid to him by said Burgess. On the 10th of November 1809, the present writ of venditioni exponas issued for a sale of the above property, and was endorsed for the use of Dennis M. Burgess administrator of Charles Burgess, and was returned by the sheriff, that the property remained unsold. &c.

Motion on the part of the defendant to quash the writ of venditioni exponas, for the following reasons: 1. Because, in the description of the property taken under the *fieri facias,* there was not such certainty as the law requires. 2. Because the judgment, whereon the execution issued, was obtained against the defendant and C. Burgess, and by the endorsement on the execution, and the note of the plaintiff to the clerk, filed in court, it appeared, that before issuing the *fieri facias* the judgment was *satisfied,* and the execution was issued *for the use of*